## APPEAL OF ACME, PALMERS & DeMOOY FOUNDRY CO.

Docket No. 4211.     Submitted December 7, 1925.     Decided March 31, 1926.

1. The denial by the Commissioner of a claimed loss of good will through the sale by a successor corporation of certain of its tangible assets approved.

2. Profit upon the sale of capital assets determined upon the evidence.

3. The Commissioner's determination of the invested capital of the taxpayer, which was a successor through a reorganization of two corporations, under the provisions of section 331 of the Revenue Act of 1918, approved.

*E. J. Brunenkant, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This appeal is from the determination of a deficiency in income and profits tax for the calendar year 1920 in the amount of $28,974.59, arising from the inclusion in income of alleged profits from the sale of capital assets, instead of an allowance of a loss thereon, as claimed by the taxpayer; also, the exclusion from invested capital of $99,132.64, alleged value of good will.

### FINDINGS OF FACT.

The taxpayer is an Ohio corporation, with a capital stock of $400,000, organized in 1919 to take over the business and property of The Palmers & DeMooy Foundry Co. and the Acme Foundry Co. Its place of business is at Cleveland.

The Palmers & DeMooy Foundry Co. was founded in the year 1886 and was operated as a partnership until the year 1890, when it was incorporated with a capital stock of $100,000. The amount of $72,600 was set up on the books as representing the value of tangible assets, and $27,400 as representing the value of good will acquired from the partnership.

The Acme Foundry Co. was incorporated in the year 1900. On July 1, 1919, its outstanding capital stock was $150,000.

On July 1, 1919, the stock of The Palmers & DeMooy Foundry Co. of the par value of $100,000, together with $5,000 in cash, was transferred to the taxpayer for its capital stock of the par value of $155,000. On the same day the entire capital stock of the par value of $150,000 of the Acme Foundry Co. and $5,000 in cash were transferred to the taxpayer for the remainder of its capital stock of the par value of $245,000. Immediately thereafter the assets of The Palmers & DeMooy Foundry Co. and the Acme Foundry Co. were

transferred to the taxpayer, and it later sold the assets so acquired from The Palmers & DeMooy Foundry Co. under the circumstances hereinafter set forth. In its balance sheet as of July 1, 1920, the taxpayer included good will in the amount of $67,071.69. This item does not represent an evaluation of the good will of either The Palmers & DeMooy Foundry Co. or the Acme Foundry Co. but was merely a balancing entry, representing the excess of the par value of the capital stock issued over the book value of the tangible assets acquired from the two companies.

The plant of The Palmers & DeMooy Foundry Co. was located in a section of Cleveland known as the " flats," possessing advantageous rail terminal facilities and being also in close proximity to the principal hotels and labor markets on the " Square."

Shortly after July 1, 1919, a certificate of convenience and necessity was granted by the Interstate Commerce Commission to the Van Sweringen interests for the construction of a Union Station at the " Square." The Palmers & DeMooy Foundry Co.'s plant was located on the proposed Union Station site, and negotiations were at once begun by the Van Sweringens to acquire The Palmers & DeMooy site, either by direct purchase or by condemnation proceedings, with the result that a contract of sale was consummated whereby the plant of The Palmers & DeMooy Foundry Co., including the land, leaseholds, buildings, machinery, and equipment, were sold to M. J. and O. P. Van Sweringen as of January 1, 1920, for $91,600.

The management of The Palmers & DeMooy Foundry Co. had always followed a very conservative policy with respect to the valuation of its assets, and for many years had charged the cost of replacements of buildings, equipment, and machinery to expense. For instance, at one time, an annex to a building was constructed at a cost of $4,000, which was charged to expense. Likewise, replacements to tumbling room, machinery, and equipment, costing about $34,000, were charged to expense. The net depreciated cost, as shown by the taxpayer's books, of the assets sold to the Van Sweringens, exclusive of leaseholds, as of January 1, 1920, the date of sale, was $60,741.33.

The leasehold interests included in the assets sold covered several parcels of real estate with unexpired terms of from one to eight years. The value of these leaseholds was $6,009.88 on July 1, 1919, and $5,678.06 on January 1, 1920.

In computing the profit upon the sale to the Van Sweringens the Commissioner determined that the depreciated cost of the assets sold was $42,008.12, denied the taxpayer's claim that it suffered a loss, through the sale of the tangible assets of The Palmers & DeMooy Foundry Co., of the good will thereof of the value of $86,400.04, and

that the amount of the profit was $49,519.88. Apparently no value was ascribed to the leaseholds. He also reduced invested capital claimed by the taxpayer for the year 1920 in the amount of $99,132.-64, as a result of applying the provisions of section 331 of the Revenue Act of 1918.

OPINION.

LITTLETON: The first question concerns the amount of profit or loss upon the sale in the year 1920 of the tangible assets acquired from The Palmers & DeMooy Foundry Co.

The Commissioner contends that the taxpayer realized a profit of $49,519.88 from the sale, and the taxpayer claims that it sustained a loss of $60,241.35, in that, as a result of the sale, it lost the good will it had acquired from The Palmers & DeMooy Foundry Co., for which it claimed a value of $86,400.04.

We are satisfied from the evidence that the depreciated cost at the date of sale of the tangible assets sold was $66,419.39, and that a profit of $25,180.61 resulted,. exclusive of the value, if any, of the good will acquired from The Palmers & DeMooy Foundry Co., instead of a profit of $49,519.88, as determined by the Commissioner. We do not, however, agree with the taxpayer's contention that, as a result of the sale of the tangible assets, it lost whatever good will it had acquired from the Foundry Co. We do not believe, and it is not established by the evidence, that the good will of The Palmers & DeMooy Foundry Co. attached solely to its tangible assets and the location of its plant. We are satisfied that the good will, or at least a great part thereof, was bound up with and attached to the name of " The Palmer & DeMooy Foundry Company " which the taxpayer incorporated in its own corporate name, and which it still retained after the sale of the assets. Even if we were to conclude, which we do not, that at least a part of the good will of the Foundry Co. was attached to its tangible assets and the location of its plant, there are no facts before us from which we could determine the value of that part. In our opinion, the evidence does not establish that through the sale in question the taxpayer suffered a loss or diminution in value of whatever good will it had acquired from the Foundry Co. We therefore find that the taxpayer realized a profit of $25,180.61 on the sale.

With reference to the second question, the taxpayer alleged that the Commisisoner reduced its invested capital for the year 1920 by the amount of $99,132.64 " on the basis of balance sheet adjustments of tangible assets and good will," which allegation was admitted by the Commissioner in his answer. Further than is disclosed by the allegation and the admission, the record does not show the nature of the adjustments. The taxpayer also alleged, in connection with

this item, that in exchange for its capital stock it acquired tangible assets, that is, the capital stock of the two predecessor corporations and not their assets, which allegation, when read in connection with the other allegation just quoted, would indicate that the adjustment related to the exclusion from the taxpayer's invested capital of good will set up on its books as having been taken over from two other corporations. The Commissioner explained that, in computing the invested capital, he applied the provisions of section 331 of the Revenue Act of 1918 in determining the value of the tangible and intangible assets acquired from the predecessor corporations for stock. The amount at which the tangible and intangible assets of the two predecessor corporations could be included in the invested capital of the taxpayer for 1920 is governed by section 331 of the Revenue Act of 1918, which provides that—

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred and received : * * *

The evidence does not warrant any modification of the Commissioner's determination of invested capital under the above-quoted section.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*